IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-365-BO

STEPHEN R. PORTER, PH.D., )
)
    Plaintiff, )
)
v. ) ORDER
)
BOARD OF TRUSTEES OF NORTH )
CAROLINA STATE UNIVERSITY, W. )
RANDOLPH WOODSON, MARY ANN )
DANOWITZ, JOY GASTON GAYLES, )
JOHN K. LEE, and PENNY A. PASQUE, )
individually and in their official capacities, )
)
    Defendants. )

This cause comes before the Court on defendants' motion to dismiss. Plaintiff has responded, defendants have replied, and in this posture the matter is ripe for ruling. Plaintiff has also sought leave to file a sur-reply in opposition to the motion to dismiss, which defendants oppose. For the reasons that follow, defendants' motion to dismiss is granted and this action is dismissed.

## BACKGROUND

Plaintiff initiated this action by filing a complaint on September 14, 2021. Plaintiff alleges claims against the Board of Trustees of North Carolina State University, the Chancellor of North Carolina State University (NCSU), the Dean of NCSU's College of Education, a professor and program coordinator in the Department of Educational Leadership, Policy, and Human Development (Dept. of Educational Leadership) at NCSU, and the current and prior heads of the Dept. of Educational Leadership. Plaintiff alleges that defendants violated plaintiff's right to free

speech under the First and Fourteenth Amendments and seeks damages, a declaratory judgment, and a permanent injunction. *See* 42 U.S.C. § 1983; 22 U.S.C. § 2201.

Plaintiff alleges as follows in his complaint. [DE 1]. Plaintiff was hired by NCSU in 2011 as a tenured professor in the Dept. of Educational Leadership. *Id.* ¶ 13. Plaintiff was hired to teach courses in graduate-level statistics and research methods in the College of Education, of which the Dept. of Educational Leadership is a part. *Id.* When plaintiff was hired he joined the Higher Education Program Area within the Dept. of Educational leadership. *Id.* The Dept. of Educational Leadership offers both a master's degree and a Ph.D. and does not offer degrees to undergraduate students. *Id.* ¶ 14. While at NCSU plaintiff has had "limited involvement" with the master's degree program, has no master's degree advisees, and does not attend events which are related only to the master's degree. *Id.* ¶ 15.

In 2015, the College of Education faculty voted to create the Scholar Leader Ph.D. program. *Id.* ¶ 16. As a part of this change, each Ph.D. program within the College of Education continues to have its own program-specific courses, but all College of Education Ph.D. students take common research methods and Scholar Leader courses. *Id.* All Ph.D. programs are located within a Program Area of Study, which is distinct from a Program Area. *Id.* ¶ 17. In essence, separate tracks were created for master's degree and Ph.D. students, but plaintiff alleges that the Dept. of Educational Leadership ignored these distinctions and continued to address both master's and Ph.D. matters within the original Program Areas. *Id.*

Plaintiff alleges that, prior to suffering adverse employment action, he spent "considerable time" on Higher Education Ph.D. activities, including advising Higher Education Ph.D. students, serving on Higher Education Ph.D. committees, and actively recruiting prospective Ph.D. students. *Id.* ¶ 18. Plaintiff further alleges that he has been outspoken in recent years about his concern

2

regarding the focus on "so-called 'social-justice' affecting academia in general" and "his concern that the field of higher education study is abandoning rigorous methodological analysis in favor of results-driven work aimed at furthering a highly dogmatic view of 'diversity,' 'equity,' and 'inclusion.'" *Id.* ¶ 19.

Plaintiff alleges that defendants retaliated against him for exercising his right to free speech, specifically identifying three statements or communications that he made in 2016-2018.

In the spring of 2016, plaintiff alleges that he expressed concerns at a department meeting about a proposal to add a question about diversity on student course evaluations. *Id.* ¶ 20. Plaintiff describes the discussion as amicable but notes that the incident was later referenced in a May 2017 departmental report by NCSU's Office of Institutional Equity and Diversity wherein plaintiff was labeled as a "bully." *Id.* ¶¶ 23-24. Defendant Pasque became head of the Dept. of Educational Leadership at the beginning of academic year 2017-18 and discussed the report with plaintiff during a meeting in November 2017. *Id.* ¶¶ 25-26. In January 2018, defendant Pasque emailed plaintiff restating the concern regarding "bullying" and invited plaintiff to respond. *Id.* ¶ 29. Pasque's email was later included in plaintiff's personnel file without his knowledge. ¶ 32.

In April 2018, the journal *Inside Higher Ed* published an article about a faculty search committee at NCSU, which was chaired by one of plaintiff's colleagues, Alyssa Rockenbach. The search committee had included as a finalist for a faculty position a professor from another university who had been terminated by that university after the professor allegedly ran a side business which he staffed with university staff members, neglected his professorial duties, and had an inappropriate relationship with a student. *Id.* ¶¶ 33-34. Plaintiff was concerned that his NCSU colleague had "cut corners" in vetting the candidate "out of a desire to hire a Black scholar whose work focused on racial issues". *Id.* ¶ 36. After the article was published plaintiff sent an email to

3

the Higher Education faculty linking to the article and stating: "Did you all see this? . . . This kind of publicity will make sure we rocket to number 1 in the rankings. Keep up the good work, Alyssa!" *Id.* ¶ 37.

Defendant Pasque met with plaintiff about the email a week later, asking plaintiff about his intent in sending the email. *Id.* ¶ 38. Plaintiff later learned that defendant Gayles had forwarded plaintiff's email to Pasque with a message "NOT COOL!!! I am so mad about all of this I could scream!! I can't stay silent about this. It's maddening!" *Id.* ¶ 40. Plaintiff also learned that Rockenbach had forwarded plaintiff's email to defendants Pasque and Danowitz as well as the Associate Vice Provost for Equal Opportunity and Equity. *Id.* During a follow up meeting with defendant Pasque on April 24, 2018, plaintiff alleges that Pasque inquired as to whether plaintiff had to remain a member of the Higher Education Program Area or whether he could be a member of the department without a program area. *Id.* ¶ 41. Plaintiff received a good annual evaluation that year, with a notation that plaintiff, and all faculty, were expected to be collegial. *Id.* ¶ 46.

Plaintiff alleges that on September 3, 2018, he once again exercised his right to free speech when he published a post on his personal blog entitled "ASHE Has Become a Woke Joke." *Id.* ¶ 47. Plaintiff's post commented on research a colleague of his had gathered about topics for discussion at the upcoming ASHE (Association for the Study of Higher Education) conference; this research demonstrated that the focus of the conference had shifted from general, post-secondary research to social justice. *Id.* Plaintiff's blog post generated controversy on social media. *Id.* ¶§ 48-52.

At the start of the 2018-2019 academic year, defendant Danowitz met with Higher Education Program Area faculty, including plaintiff, alerting them to the possibility of a spousal

hire.[1] *Id.* ¶ 53. The spousal candidate was a well-known post-secondary researcher interested in an NCSU position. *Id.* Instead of discussing the candidate as planned at a Higher Education Program Area faculty meeting, defendant Pasque invited plaintiff to a Google Hangout meeting on October 15, 2018, to which defendant Gayles and two other people were also invited. *Id.* ¶ 55. Pasque proposed that plaintiff leave the Higher Education Program Area and join a new Higher Education Policy Program Area with plaintiff, the potential spousal hire, and Pasque as the members. *Id.* ¶ 56. Plaintiff alleges that this was the second time in six months that Pasque had suggested plaintiff leave the Higher Education Program Area and that it was in retaliation for plaintiff's unpopular speech. *Id.* ¶¶ 56-57. Plaintiff alleges that the Google meeting focused on plaintiff's refusal to leave the Higher Education Program Area and the impact on the ability to bring in the spousal hire. *Id.* ¶ 58. Plaintiff stated "Give me a f****** break, folks. I was the one who said [the potential spousal hire] should come. And now I'm the bad guy because I don't want to leave Higher Ed for a non-existent program area." *Id.* ¶ 60. Plaintiff received a letter from Pasque on October 18, 2018, chastising him for his use of profanity and expression of frustration at the meeting. *Id.* ¶ 62.

Plaintiff received another letter from Pasque on November 7, 2018, expressing concern about plaintiff's collegiality. *Id.* ¶ 63. The letter highlighted the 2017 climate study which labeled plaintiff as a bully, plaintiff's circulation of the *Inside Higher Ed* article, and plaintiff's use of profanity during the October 2018 meeting. *Id.* ¶¶ 63. Pasque's letter indicated that if plaintiff did not repair the relationship among Higher Education Program Area faculty or continued to display a lack collegiality he would be removed from the Higher Education Program Area. *Id.* ¶ 64.

---

[1] A spousal hire is described by plaintiff as an informal agreement among universities in the area to help place one member of an academic couple when there is an interest in hiring the other member. *Id.* ¶ 53.

5

On November 19, 2018, plaintiff received an email from Pasque about student reactions to the ASHE conference keynote address, which addressed plaintiff's "woke joke" blog post. *Id.* ¶ 66-67. Pasque proposed a community conversation during which plaintiff would be expected to address graduate students' concerns to help students reconcile the "great teacher" they knew with what they had heard about plaintiff from the ASHE address. *Id.* ¶¶ 67-69. Plaintiff later discovered that only two of approximately sixty students had spoken with Pasque about the ASHE matter and that an informal discussion regarding the matter had taken place with Dept. of Educational Leadership faculty after an evening social with students. *Id.* ¶ 71. Plaintiff sought to have the issue added to a January 2019 Higher Education Program Area meeting but it was not. *Id.* ¶ 72. However, in February 2019, plaintiff and Pasque again met and Pasque repeatedly expressed her frustration that plaintiff had not addressed the ASHE matter. *Id.* ¶ 73-74.

On July 5, 2019, plaintiff received his annual evaluation letter and was informed that he had been removed from the Higher Education Program Area because Higher Education faculty had not been able to make "concerted progress" on resolving issues within the Program Area. *Id.* ¶ 78. Plaintiff would also be expected to teach an extra, fifth course. In July 2019, Pasque left NCSU and was replaced by Defendant Lee. *Id.* ¶ 81. Lee informed plaintiff he would not be required to teach an extra course following plaintiff's filing of an internal grievance on August 28, 2019, contesting his removal from the Higher Education Program Area and the addition of an extra course to his workload. *Id.* ¶ 82-83. The requirement that plaintiff teach a fifth course was not, however, removed from plaintiff's personnel file. *Id.* ¶ 83.

Plaintiff alleges that as a consequence of being removed from the Higher Education Program Area, he was barred from attending the Higher Education Orientation for new PhD. students, the Higher Education welcome cookout, and the Higher Education retreat; plaintiff also

6

alleges that he was excluded from the Diagnostic Advisement Procedure process for second-year Ph.D. students, including for his own advisees. *Id.* ¶¶ 85-92.

Plaintiff later expressed concern to defendant Lee that he was being set up so that when he was up for post-tenure review in a few years, he would not have any advisees and could be stripped of tenure and fired for not fulfilling his job duties. *Id.* ¶ 101. Plaintiff alleges that in December 2019 he was prohibited from attending a Ph.D. admissions meeting, which is when advisees are assigned, and was further barred from attending a Spring 2020 Ph.D. recruitment weekend. *Id.* ¶ 104. Plaintiff's internal grievance was denied in June 2020. *Id.* ¶ 105.

Finally, in October 2020, some Dept. of Educational Leadership faculty proposed a new Ph.D. Program Area of Study in Higher Education Access, Equity, and Justice. *Id.* ¶ 107. Plaintiff was not asked whether he would be interested in participating in this new Program Area of Study and all faculty members with the exception of plaintiff were invited to join. *Id.* ¶¶ 108-110. Plaintiff and one other faculty member did not join the new Program Area and remained in the Higher Education Program Area of Study. *Id.* ¶ 110. They were informed in March 2021 that they could make offers of admission to doctoral candidates but that those candidates would be encouraged to switch to the new Program Area of Study once they arrived. *Id.* ¶ 114.

## DISCUSSION

Defendants have moved to dismiss plaintiff's complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be

---

[2] The Court, in its discretion, allows plaintiff's motion for leave to file a sur-reply [DE 24]. The proposed sur-reply filed at [DE 24-1] is deemed filed.

7

considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans,* 166 F.3d at 647.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A.  *Board of Trustees and official capacity claims*

Plaintiff does not appear to dispute that his claims for damages against the Board of Trustees and the individual defendants in their official capacities are barred by sovereign and Eleventh Amendment immunity. *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356,

8

363 (2001); *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1138 (4th Cir. 1990); *see also Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003). In his response to the motion to dismiss, however, plaintiff argues that he may nonetheless obtain prospective relief against the defendants under *Ex Parte Young*, 209 U.S. 123 (1908). Under *Ex Parte Young*, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998).

With one exception, the relief plaintiff seeks is not prospective. In his complaint, plaintiff seeks, in addition to damages and attorney fees, (1) a declaration that defendants' actions violated his First Amendment right to speak on matters of public concern and (2) a permanent injunction requiring defendants to reinstate plaintiff to the Higher Education Program Area; allow him to join the Higher Education Opportunity, Equity, and Justice Program Area of Study; and remove the requirement that he teach a fifth course from his personnel file. [DE 1].

Where the effect of a declaratory judgment and injunction would be to "undo accomplished state action[,]" the *Ex Parte Young* exception does not apply. *Paraguay*, 134 F.3d at 628. In his sur-reply, plaintiff clarifies that he seeks "prospective relief against the continuation of the past violation." [DE 24-1]. However, "even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation." *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016). Accordingly, plaintiff's requests for injunctive relief regarding his permission to join the new Higher Education Opportunity, Equity, and Justice Program Area of Study and the removal of the requirement that he teach a fifth course are not prospective, and *Ex Parte Young* does not provide an exception to Eleventh Amendment immunity.

9

Plaintiff's request for 'reinstatement', however, to the Higher Education Program Area may well state a claim for prospective injunctive relief. "[R]einstatement is a form of prospective relief, [and] the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies." *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013); *see also Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 243 (4th Cir. 2020) (whether in the context of termination or demotion "claims for reinstatement to previous employment meet the *Ex Parte Young* exception."). However, as discussed below, plaintiff has failed to state a First Amendment retaliation claim.

B.  *First Amendment retaliation*

"The First Amendment protects not only the affirmative right to speak, but also the 'right to be free from retaliation by a public official for the exercise of that right.'" *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (citation omitted). Retaliation in violation of the First Amendment is actionable because it tends to chill the exercise of constitutional rights. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). However, "[w]here there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *Am. C.L. Union of Maryland, Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993). If a plaintiff has alleged adverse employment action, the following must be determined in order for a public employee to prove a claim for First Amendment retaliation:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's [adverse employment action].

*McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998); *see also Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 654 (4th Cir. 2017). "The causation requirement is 'rigorous' in that the protected expression must have been the 'but for' cause of the adverse employment action alleged." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006)

What constitutes a materially adverse action for a Title VII retaliation claim is "similar to the standard for demonstrating an adverse action in the First Amendment retaliation context." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 697 n.12 (4th Cir. 2018). Whether an action is adverse is an objective standard, which will be satisfied if the retaliatory conduct would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500.

Termination, demotion, loss of compensation, and loss of opportunity for promotion are well-settled materially adverse employment actions. *See Ridpath*, 447 F.3d at 316; *Boone v. Goldwin*, 178 F.3d 253, 256-57 (4th Cir. 1999). The denial of opportunity for professional advancement may also constitute materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). The adverse actions about which plaintiff complains are his removal from the Higher Education Program Area, being told he would have to teach a fifth course (without actually being required to teach a fifth course), and not being invited to join a recently formed Ph.D. Program Area of Study.

Plaintiff remains a tenured professor in the NCSU College of Education and a member of the Higher Education Ph.D. Program Area of Study. He has not alleged he has suffered any diminution in pay or responsibility or that he has lost the opportunity for promotion. At bottom, plaintiff alleges that the decision to remove him from the Higher Education Program Area will, in the future, result in his being unable to obtain advisees which will leave his future at NCSU in

11

doubt. Such adverse consequence, however, is speculative. Plaintiff has not alleged that he does not currently have any advisees or that his tenure status is now at risk. Accordingly, he has failed to plausibly allege that any defendant took materially adverse action against him in retaliation for any protected speech.

Moreover, plaintiff has failed to plausibly allege that retaliation for engaging in protected speech was the proximate cause of any allegedly adverse action by defendants. Plaintiff identifies three instances of speech for which he was allegedly retaliated against. The last instance took place eleven months prior to his removal from the Higher Education Program Area in July 2019, which is too long to demonstrate that temporal proximity would tend to show that the protected activity was "the substantial motivating factor in the adverse action." *Penley*, 876 F.3d at 657 (eight to nine months between speech and adverse action is insufficient to demonstrate causation based on temporal proximity).

The complaint further fails to otherwise show a causal connection between the allegedly protected speech and any adverse action. As argued by defendants, the complaint reveals that plaintiff had been described as a bully in a department Climate Study completed in 2017 and that plaintiff made comments about and to other faculty members which could be perceived as unprofessional or disrespectful. *See* [DE 1 ¶¶ 24, 37, 60]. Finally, plaintiff's complaint alleges that defendant Pasque had repeatedly expressed concern regarding plaintiff's collegiality and his failure to repair relationships among faculty. *Id.* ¶¶ 46, 61, 62, 75. Even construing the facts and inferences in the light most favorable to plaintiff, the complaint fails to plausibly allege that any protected speech identified by plaintiff was the substantial motivating factor in the decision to remove him from the Higher Education Program Area or any other allegedly adverse action.

12

Because plaintiff has failed to plausibly allege that he has suffered adverse action or that any allegedly protected speech was the 'but for' cause of any alleged adverse employment action, he cannot state a claim for retaliation in violation of the First Amendment.[3]

The defendants named in their individual capacity further contend they are entitled to qualified immunity. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). A court may exercise its discretion to decide which step of the analysis to decide first based on the circumstances presented. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed above, the Court first holds that plaintiff has failed to plausibly allege a First Amendment retaliation claim, and thus has failed to allege that a constitutional violation occurred. However, even assuming, without deciding, that plaintiff has sufficiently alleged such a claim, the individual defendants would be entitled to qualified immunity.

A clearly established right requires existing precedent which places "the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (noting a case on point is not required). Moreover, the right must not be defined at a high level of generality and must instead focus on the particular conduct at issue. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citing *al-Kidd*, 563 U.S. at 742).

---

[3] The Court thus declines to address whether plaintiff was speaking as a citizen upon a matter of public concern and whether plaintiff's interest in speaking outweighed the NCSU's interest.

13

Although "the right to of a public employee to speak as a citizen on matters of public concern—is clearly established and something a reasonable person in the Defendants' position should have known was protected[,]" *Adams*, 640 F.3d at 566, "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, yet difficult to apply, and not yet well defined." *Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir. 2002) (citing *DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995); and *McVey,* 157 F.3d at 277).

*Adams*, the sole case on which plaintiff relies to oppose qualified immunity, involved an assistant professor's denial of promotion to full professor because of his views which were published in books and stated on television and radio programs. Here, plaintiff's speech for which he alleges he was retaliated against included his expression of concern about the inclusion of a diversity question on student course evaluations during a faculty meeting, his email to faculty regarding the school's rankings, and a personal blog post titled "ASHE Has Become a Woke Joke". Plaintiff has identified no case, nor is the Court aware of any, where on similar facts a court concluded that the constitutional or statutory right was clearly established. Accordingly, the Court concludes that the right to be free from First Amendment retaliation based upon these facts was not clearly established, and the individual defendants are alternatively entitled to qualified immunity for claims against them in their individual capacity.

In sum, plaintiff has failed to sufficiently allege an adverse action which would support his First Amendment retaliation claim, in large part because any harm he allegedly will suffer is speculative. Plaintiff has further failed to sufficiently allege that the speech identified in his complaint was the "but for" cause of any alleged retaliation, and the individual defendants are otherwise entitled to qualified immunity.

14

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss [DE 15] is GRANTED and plaintiff's complaint is DISMISSED in its entirety. Plaintiff's motion for leave to file a sur-reply [DE 24] is GRANTED. The clerk is directed to close the case.

SO ORDERED, this 15 day of June 2022.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE